UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYSHA AHMED,<br><br>                    Plaintiff,<br><br>       v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>                    Defendant. | Civil No.   05cv1894-WQH (POR)<br><br>**REPORT AND RECOMMENDATION (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (3) REMANDING CASE** |

## I.  Introduction

Plaintiff Aysha Ahmed brings this action pursuant to 42 U.S.C. §§ 1383(c)(3)[1] and 405(g)[2], to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381, et seq.  Ms. Ahmed filed a motion for

---

[1] 42 U.S.C. § 1383(c)(3) provides:

The final determination of the Commissioner of Social Security after a hearing [to determine eligibility or amount of benefits] shall be subject to judicial review as provided in section 405(g) of this title...

[2] 42 U.S.C. § 405(g) provides:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action ... brought in the district court of the United States....  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive.

1  summary judgment.  In that motion Ms. Ahmed argues she should have been found disabled under
2  the Act and that the Commissioner's decision adopting Administrative Law Judge ("ALJ") Bernard
3  Trembly's decision of June 15, 2004, denying her benefits should be reversed because the ALJ's
4  decision is not supported by substantial evidence and is based on legal error, or the matter should be
5  remanded for further administrative proceedings.  The Commissioner has filed a cross-motion for
6  summary judgment.  In that motion, the Commissioner argues the ALJ's decision is supported by
7  substantial evidence and is not based on legal error.

8  Pursuant to Southern District of California Local Civil Rule 7.1(d)(1), the Court finds these
9  motions may be decided on the papers and that no oral argument is necessary.  After careful
10 consideration of the papers, the administrative record, and the applicable law, the Court recommends
11 Plaintiff's motion for summary judgment be GRANTED, Defendant's cross-motion for summary
12 judgment be DENIED, and this case be REMANDED for further administrative proceedings.

## II.  Procedural History

14 On June 25, 1999, Ms. Ahmed filed an application for Social Security Income ("SSI") with
15 the Social Security Administration ("Administration").  Ms. Ahmed alleged that she was disabled
16 due to back pain, headaches, and mental impairments. (A.R. at 11.)  The claim was denied initially
17 and on reconsideration.  (Id.).  Subsequently, Ms. Ahmed requested a hearing before an ALJ to
18 consider her application a third time.  On May 24, 2001, ALJ James S. Carletti conducted a hearing
19 to consider the merits of Ms. Ahmed's application.  (Id.)  This hearing resulted in her application
20 being denied by ALJ Carletti in a written decision dated October 23, 2001.  (A.R. 20-29.)  Ms.
21 Ahmed subsequently requested review by the Appeals Council, but the Appeals Council found no
22 basis to grant review.  (A.R. at 12).  Thus, ALJ's Carletti's decision became the final determination
23 of the Commissioner of Social Security.

24 On March 12, 2003, Ms. Ahmed filed a new application for SSI.  (A.R. at 55-57.)  Ms.
25 Ahmed alleged that she became disabled as of December 31, 1988, due to a severe mental disorder
26 and headaches.  The claim was denied initially and on reconsideration.  (A.R. at 34-43.)  On October
27 30, 2003, Ms. Ahmed filed a request for a hearing before an ALJ.  On April 27, 2004, ALJ Bernard
28 A. Trembly conducted a hearing to consider Ms. Ahmed's application.  (A.R. at 235-49.)  This

1  hearing resulted in her second application being denied by ALJ Trembly in a written decision dated
2  June 15, 2004. (A.R. at 11-16.) Ms. Ahmed disagreed with the ALJ"s decision and requested an
3  Appeals Council Review of the decision. (A.R. at 4.) On August 10, 2005, the Appeals Council
4  concluded there was no basis for granting Ms. Ahmed's request for review and affirmed ALJ
5  Trembly's June 15, 2004, decision, which became the final decision of the Commissioner of Social
6  Security. (A.R. at 4-6.)

7  On October 4, 2005, after having exhausted all administrative remedies, Ms. Ahmed initiated
8  this action challenging the ALJ's June 15, 2004, decision. (Complaint at 1.) On May 5, 2006, Ms.
9  Ahmed filed a motion for summary judgment arguing the ALJ erred by failing to address the most
10 recent records and assessments of the treating psychiatrist and by misconstruing the conclusions of
11 the social security examining psychiatrist. On June 22, 2006, the Commissioner filed a cross-motion
12 for summary judgment arguing the ALJ properly evaluated the medical evidence. On March 1,
13 2006, District Judge William Q. Hayes referred the motions for summary judgment to Magistrate
14 Judge Louisa S Porter for her review and preparation of a report and recommendation based on that
15 review.

### III.  Factual Background

**A.  The Record**

18 Ms. Ahmed was born in Iraq on March 3, 1960, and came to the United States around 1992.
19 (A.R. at 241, 243.) At the alleged date of onset of her disability on December 31, 1988, Ms. Ahmed
20 was 28 years old. (A.R. at 55.) Ms. Ahmed lives with her spouse and their adult children. (A.R.
21 92.) According to her work history report, Ms. Ahmed has never worked, (A.R. at 92), and she and
22 her spouse survive on welfare. (A.R. at 242.)

23 At the April 27, 2004, hearing before ALJ Trembly, Ms. Ahmed testified that she does not
24 speak English, and has had mental problems since she was 14 or 18 years old. (A.R. at 243.) When
25 questioned by the ALJ regarding how her mental problems affect her from day to day, Ms. Ahmed
26 stated that she gets upset, picks fights with people, and has tried to commit suicide in the past. (A.R.
27 at 244-45.) She further stated that she spends her days lying down or talking to her children. (A.R.
28 at 245.) Ms. Ahmed's husband, who is also disabled, takes care of the daily chores. (A.R. at 245.)

Ms. Ahmed occasionally cooks meals for the family if she is feeling well.  (A.R. at 245.)  Ms. Ahmed also stated that she sometimes hears voices and feels dizzy.  (A.R. at 247-48.)

At the hearing before ALJ Trembly, Ms. Ahmed's counsel submitted new documents from her treating physician, Dr. Hamrang, which were included in the record.  Counsel explained that Dr. Ishaque (Ms. Ahmed's prior treating physician) and Dr. Hamrang work at the same clinic, and that Ms. Ahmed is now seeing Dr. Hamrang.  (A.R. at 240.)

In her application for SSI, Ms. Ahmed alleged that she was disabled due to back pain, headaches, severe mental disorder, and depression.  (A.R. at 70.)  In the hearing before the ALJ, Ms. Ahmed also stated that she takes medication for asthma.  (A.R. at 246.)  However, in her motion for summary judgment, the only issues presented to the Court are whether the ALJ failed to address the most recent psychiatric records provided by Dr. Sultana Hamrang, and whether the ALJ misconstrued the report of Dr. Sanford Shapiro, the Social Security examining psychiatrist.

**B.  Medical Evidence Presented**

    **1.**       **Saleem Ishaque, M.D. (Pacific Health Medical Center)**

Records from Dr. Saleem Ishaque begin in March 2000 and continue to November 2002.  The records indicate that he diagnosed Ms. Ahmed with Major Depressive Disorder and chronic headaches.  (A.R. at 118.)  Further, Dr. Ishaque's notes indicate that he prescribed various medications and that the medications were helping.  In November 2001, Dr. Ishaque's notes indicate that Ms. Ahmed complained of depression, inability to sleep, auditory hallucinations, and headaches.  (A.R. at 123).  In June 2002, Ms. Ahmed continued to complain of headaches, but Dr. Ishaque noted that her delusions/hallucinations were under control.  (A.R. at 125.)

    **2.**       **Sultana Hamrang, M.D. (Pacific Health Medical Center)**

Dr. Hamrang's notes begin in November 2002.  Dr. Hamrang continuously noted that Ms. Ahmed's cognitive function was within normal limits.  (A.R. 229-31.)  In March 2004, Dr, Hamrang completed a form for evaluation of mental disorders.  On that form, Dr. Hamrang noted a diagnosis of major depressive disorder with psychotic features, and ruled out post traumatic stress disorder and bipolar disorder.  (A.R. at 222.)  Additionally, Dr. Hamrang indicated that Ms. Ahmed had insomnia and decreased energy.  (A.R. at 220.)  Regarding Ms. Ahmed's intellectual functioning, Dr.

Hamrang noted that her concentration was limited. (A.R. at 220.) However, Dr. Hamrang also noted that her concentration regarding task completion is fair. (A.R. at 221.) Dr. Hamrang further indicated that Ms. Ahmed's adaptation to work and work-like situations is limited due to paranoia, auditory hallucinations, depression, and poor concentration. (A.R. at 221.)

On March 5, 2004 and March 24, 2004, Dr. Hamrang indicated that Ms. Ahmed had auditory hallucinations, that her mood was stable, that her insight/judgment was fair, and that her behavior was within normal limits. (A.R. at 224-25.) Throughout this period, Dr. Hamrang indicated that Plaintiff should continue her current treatment. (A.R. at 224-25.)

### 3.   Sanford Shapiro, M.D.

Plaintiff was examined by Dr. Sanford Shapiro in June 2003, at the request of the Disability Evaluation Department. (A.R. at 166-170.) Dr. Shapiro noted that Ms. Ahmed was "vague, evasive, and uncooperative." (A.R. at 166.) Dr. Shapiro stated that Ms. Ahmed can perform simple, repetitive tasks and complex tasks. However, Dr. Shapiro also indicated that it is impossible to assess whether she is able to maintain pace, persistence, and concentration for an eight-hour day. Further, he stated that it is not possible to assess whether Ms. Ahmed is able to deal with coworkers, supervisors, and the public. Finally, Dr. Shapiro stated that the claimant has no education, does not work, is not motivated, and that it is hard to imagine her being productive. (A.R. at 169.)

### 4.   Mental Residual Functional Capacity Assessment

Dr. Becraft, a state agency reviewing physician, completed a Mental Residual Functional Capacity Assessment of Ms. Ahmed on July 1, 2003. (A.R. 171-73.) Dr. Becraft found Ms. Ahmed was moderately limited in her ability to understand and remember detailed instructions, in her ability to carry out detailed instructions, and in her ability to interact appropriately with the general public. (A.R. at 171-73.). In all other areas, Dr. Becraft found that Ms. Ahmed was not significantly limited or was somewhere between not limited and moderately limited. (A.R. at 171-73.)

### 5.   Additional Medical Evidence

The administrative record includes various medical records from Ms. Ahmed's visits to doctors regarding her back pain and other physical symptoms. A cardiology consultation report from Grossmont Hospital indicates that Ms. Ahmed has no active cardiopulmonary disease. (A.R. at

130.) The administrative record indicates that Ms. Ahmed saw Roman B. Cham, M.D., regarding her low back pain. (A.R. at 155.) Dr. Cham recommended an MRI scan. The MRI scan, performed by Renee Glass, M.D., suggested a right paracentral disc herniation or protrusion at L4/L5 and a ventral protrusion at L3/L4. (A.R. at 158.) Based on the results of the MRI scan, Dr. Cham recommended an epidural block. (A.R. at 158.)

Thomas J. Sabourin, M.D., examined Ms. Ahmed and prepared a summary report of the orthopaedic consultation at the request of the Department of Social Services. (A.R. at 159-63.) In his report, Dr. Sabourin stated: "This patient enters with a vast array of symptoms and almost nothing in the way of physical findings. She does have slight decreased range of motion in the cervical and lumbar spine, but it is difficult to tell whether she gives full effort." (A.R. at 162.) Dr. Sabourin further indicates that based on his examination, he can find no orthopaedic restrictions in Ms. Ahmed.

**C.  ALJ's Findings**

As a preliminary matter, ALJ Trembly discussed the *res judicata* effect of ALJ Carletti's decision, dated October 23, 2001. ALJ Trembly pointed to Acquiescence Ruling (AR) 97-4(9), which provides that a final decision by an ALJ that a claimant is not disabled gives rise to a presumption that the claimant continues to be not disabled after the period adjudicated, and that this presumption of continuing nondisability applies when adjudicating a subsequent disability under the same title of the Act as the prior claim. (A.R. at 12.)

ALJ Carletti found that Ms. Ahmed had a severe depressive disorder, headaches, and low back pain. In her second application for SSI, Ms. Ahmed alleged that she has asthma, an impairment not considered by ALJ Carletti. (A.R. at 13.) Because Ms. Ahmed established that she has an impairment not covered by ALJ Carletti's decision, she successfully rebutted the presumption of continued nondisability. Although Ms. Ahmed rebutted the presumption of continued nondisability, ALJ Trembly found that there is no new and material evidence relating to the claimant's residual functional capacity, education, or work experience. (A.R. at 13.) Thus, the *res judicata* doctrine applies to those factors, and ALJ Trembly found that there is no reason to disturb ALJ Carletti's findings regarding Ms. Ahmed's residual functional capacity, education, and work

experience. (A.R. at 13.)

After a lengthy discussion of the documents and medical evidence presented, ALJ Trembly determined that Ms. Ahmed was not entitled to Supplemental Security Income under the Act. (A.R. at 16.)

Specifically, the ALJ found Ms. Ahmed had not engaged in substantial gainful activity since the alleged onset of disability. (A.R. at 15.) The ALJ also found that Ms. Ahmed's depressive disorder, headaches, and low back pain are considered "severe" based on the requirements of the regulations. (A.R. at 15.) However, the ALJ found her impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Additionally, the ALJ found that Ms. Ahmed's allegations regarding her limitations were not totally credible. (A.R. at 15.)

Regarding Ms. Ahmed's residual functional capacity, the ALJ found: (1) she can lift and/or carry up to 10 pounds frequently and 20 pounds occasionally; (2) she can more than occasionally bend and stoop; (3) she is limited to simple and repetitive tasks; (4) she cannot tolerate more than minimal co-worker and supervisor interaction; and (5) she cannot tolerate any public contact. (A.R. at 15.)

Additionally, the ALJ found that Ms. Ahmed is a "younger individual" who has no past relevant work. (A.R. at 15). However, she has the residual functional capacity to perform a significant range of light work. (A.R. at 15.) There are significant number of jobs in the national economy which Ms. Ahmed could perform, including garment folder (600 positions in the regional economy and 10,000 positions in the national economy) and assembler (3,200 positions in the regional economy and 400,000 positions in the national economy). (A.R. at 16.) Lastly, the ALJ found that Ms. Ahmed was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (A.R. at 16.)

## IV. Discussion

### A. Legal Standard

The supplemental security income program established by Title XVI of the Act provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1983. To qualify, a claimant must establish inability to engage in "substantial gainful activity" because of a

"medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner makes this assessment by a five-step analysis. First, the claimant must not currently be working. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the claimant can do his past work, benefits are denied. 20 C.F.R. § 416.920(e). Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f). The last two steps of the analysis are required by statute. 42 U.S.C. § 1382c(a)(3)(B).

In addition, when evaluating the severity of a claimant's alleged mental impairments, the Commissioner uses a "special technique" at each level in the review process. 20 C.F.R. § 416.1520a. To be considered disabled under the Act, the claimant must have (1) a medically determinable mental impairment(s), 20 C.F.R. § 416.1520a(b)(1),[3] and (2) exhibit specified functional limitations as a result of that impairment(s) that prohibit the claimant from engaging in any gainful activity. 20 C.F.R. § 416.1520a(b)(2). If the claimant has a medically determinable mental impairment but does <u>not</u> exhibit the requisite functional limitations, the claimant may nevertheless still be considered disabled if the claimant exhibits clusters of symptoms or a syndrome that indicate the inability to engage in gainful activity. 20 C.F.R. § 404.1520a(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.A. (impairment(s) must either pose functional limitations or cause

---

[3] There are nine diagnostic categories that the Act considers to be medically determinable mental impairment(s): Organic mental disorders (12.02); schizophrenic, paranoid, and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety-related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.A.

symptoms or a syndrome to support finding of disabled).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3), 405(g). The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988) (citing Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. Sandqathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample, 694 F.2d at 642.

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. Id. (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983)).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to

the Social Security Administrator for further proceedings. Id.

The doctrine of *res judicata* applies to administrative decisions, including those made by the Social Security Administration. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). The doctrine bars the agency from reconsidering a factual question that it has already decided. A final decision by an ALJ that a claimant is not disabled gives rise to a presumption that the claimant continues to be not disabled after the period adjudicated, and this presumption applies when adjudicating a subsequent disability claim. See Lyle v. Secretary of Health & Human Services, 700 F.2d 566, 568 (9th Cir. 1983). In order to overcome the presumption of continuing nondisability arising from the first ALJ's findings, the claimant must prove "changed circumstances" indicating a greater disability. Chavez, 844 F.2d at 693.

**B. Ms. Ahmed's Claims**

Ms. Ahmed makes two arguments in her motion for summary judgment. First, Ms. Ahmed contends the ALJ failed to address the most recent psychiatric records provided by Dr. Sultana Hamrang. Second, she alleges the ALJ misconstrued the report of Dr. Sanford Shapiro, the Social Security examining psychiatrist.

The Ninth Circuit distinguishes among the opinions of three types of physicians:[4] (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, more weight is given to the opinion of a treating source than to that of a nontreating physician. Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).

The treating and examining physician's findings and conclusions are not, however, necessarily dispositive as to either a physical condition or the ultimate issue of disability.

---

[4] For purposes of this opinion, the term "physician" or "doctor" includes psychologists and other health professionals who do not have medical degrees. 20 C.F.R. § 416.927 (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating sources and examining sources).

Regennitter v. Commissioner of the Social Security Administration, 166 F.3d 1294, 1298 (9th Cir. 1998); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  The ALJ may disregard the treating or examining physician's findings and conclusions whether or not those findings and conclusions are contradicted.  Lester, 81 F.3d at 830-31; Magallanes, 881 F.2d at 750.  The ALJ, for instance, need not accept the ultimate conclusion of a physician if it is conclusionary, brief and unsupported by clinical findings.  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  Likewise, where evidence in the record, such as laboratory test results, contrary reports from examining physicians, and the claimant's own testimony, conflicts with the findings of the physician, the ALJ may properly reject such an opinion.  Magallanes, 881 F.2d at 751.

The ALJ is nonetheless required to consider every medical opinion in the record and determine the weight to give each opinion.  20 C.F.R. § 416.927(d).  While the ALJ need not state whether he rejects or accepts a particular opinion, the ALJ must still provide evidence he considered each opinion so that the reviewing court may draw legitimate inferences as to how the ALJ viewed a particular physician's findings and opinions.  Magallanes, 881 F.2d at 751.  Further, findings of fact made by State agency medical consultants must be treated by the ALJ as expert opinion evidence; thus, the ALJ must explain the weight given to these opinions in his decision.  Soc. Security Reporting Service: Rulings (West) (July 2, 1996) ["SSR 96- 6p"]; 20 C.F.R. § 416.927(d).

**1. Dr. Sultana Hamrang's Opinion**

Ms. Ahmed first argues the ALJ did not address the records of Dr. Sultana Hamrang, her most recent treating psychiatrist.  Specifically, Ms. Ahmed contends Dr. Hamrang noted that she was suffering from depression, insomnia, and decreased energy.  Further, Ms. Ahmed indicates that Dr. Hamrang noted that her daily activities were completed with the assistance of her husband, her social functioning was limited due to paranoia and auditory hallucinations, and her adaptation to work was limited due to paranoia, auditory hallucinations, depression, and poor concentration.

The Commissioner contends the ALJ did not reject any medical evidence regarding Ms. Ahmed's mental impairment, and is not obligated to discuss every piece of evidence.  Further, the Commissioner argues that the ALJ found that the current medical evidence was consistent with the

1 evidence of mental functioning found in Plaintiff's prior determination.

2 Here, there is no clear indication that ALJ Trembly considered the opinion of Dr. Hamrang. Rather, in regards to Ms. Ahmed's mental impairments, ALJ Trembly reiterated the findings of ALJ Carletti, discussed the opinion of Dr. Sanford Shapiro, an examining physician, and summarized by saying that "in all, the evidence of record for the period since ALJ Carletti's decision indicates no material change in the claimant's impairments warranting a change in the claimant's functional capacity." Based thereon, ALJ Trembly found that the doctrine of *res judicata* applied and adopted the residual functional capacity set forth in ALJ Carletti's decision.

While the ALJ is not required to state whether he rejects or accepts every medical opinion, he is required to provide some evidence that he considered each opinion so that this Court may draw legitimate inferences regarding how he viewed particular findings. Based on the Court's review of the record, this Court finds that ALJ Trembly's discussion of the evidence, including his summary statement that there has been "no material change in the claimant's impairments," is not sufficient to allow the Court to infer that Dr. Hamrang's opinion was considered. Given that Dr. Hamrang was a treating physician, this Court is reluctant to leap to the conclusion that her opinion was considered based on a summary statement of the evidence. Accordingly, the Court finds that the ALJ erred in not sufficiently discussing Dr. Hamrang's opinion. Thus, this Court recommends this case be remanded to the ALJ for further findings regarding Dr. Hamrang's assessment of Ms. Ahmed.

**2. Dr. Sanford Shapiro's Opinion**

Ms. Ahmed argues that ALJ Trembly misconstrued the report of Dr. Sanford Shapiro, the Social Security examining psychiatrist. Specifically, Ms. Ahmed contends that the ALJ failed to mention that Dr. Shapiro stated that "it is not possible to assess whether [Ms. Ahmed] is able to maintain pace, persistence, and concentration for an eight-hour day" and that it is not possible to assess whether she is able to deal with co-workers, supervisors, and the public. (A.R. at 169.) Further, the ALJ does not state that Dr. Shapiro's report indicates that he would find it hard to imagine Ms. Ahmed being productive.

The Commissioner contends that although Dr. Shapiro stated that it was hard to imagine Ms. Ahmed being productive, it is clear from the record that this was not because of mental impairment.

Rather, Dr. Shapiro's opinion was based on the fact that Plaintiff was not educated, had never worked, and was not motivated. Further, the Commissioner argues that Dr. Shapiro had difficulty assessing Ms. Ahmed's mental functioning due to her lack of cooperation.

In discussing Dr. Shapiro's opinion, ALJ Trembly noted that Ms. Ahmed was not cooperative and that it was impossible to assess her mental functioning. Further, the ALJ noted that Dr. Shapiro found that Ms. Ahmed could perform simple repetitive tasks. Although Ms. Ahmed points out that ALJ Trembly did not mention certain portions of Dr. Shapiro's report, the ALJ cannot reasonably be expected to mention every sentence of every piece of medical evidence. Such a requirement would be impractical. Rather, the ALJ must consider every opinion and provide evidence that indicates that each was considered.

Although Ms. Ahmed claims that the ALJ misconstrued Dr. Shapiro's report, the ALJ's findings are consistent with the report. In his findings, the ALJ states:

> The claimant has the following residual functional capacity: the claimant can lift and/or carry up to 10 pounds frequently and 20 pounds occasionally; and can more than occasionally bend and stoop. The claimant is limited to simple and repetitive tasks. The claimant cannot tolerate more than minimal co-worker and supervisor interaction. The claimant cannot tolerate any public contact.

First, regarding task performance, the ALJ found that Ms. Ahmed is more limited than the findings stated in Dr. Shapiro's report. Dr. Shapiro stated that Ms. Ahmed can perform simple, repetitive tasks *and* complex tasks. The ALJ found that she was limited to only simple and repetitive tasks. Second, although Dr. Shapiro stated that he cannot assess whether Ms. Ahmed can deal with co-workers, supervisors, and the public, the ALJ found that she can tolerate minimal co-worker and supervisor interaction, but no public contact. These findings are supported by "substantial evidence" in the record. Ms. Ahmed's treating physician, Dr. Hamrang, stated that she was "limited" in her adaptation to work and work-like situations, which includes her interaction with supervisors. (A.R. at 221.) Further, Dr. Becraft, in his Psychiatric Review Technique, indicated that Ms. Ahmed is only moderately limited in social functioning, rather than extremely limited. (A.R. at 182.) Third, consistent with Dr. Shapiro's statement that he cannot assess Ms. Ahmed's pace, persistence, and concentration, the ALJ also did not make a specific finding regarding those factors. Further, other doctors made findings that Ms. Ahmed's concentration was fair, (A.R. at 221), and

that she only had "mild" difficulties maintaining concentration, persistence, and pace. (A.R. at 182.)

In regards to Dr. Shapiro's statement that it is hard to imagine Ms. Ahmed being productive, the statement was made in the context of her lack of education, work history, and motivation. In another portion of the report, Dr. Shapiro indicated that Ms. Ahmed can perform both simple, repetitive tasks and complex tasks. The fact that the ALJ did not mention the specific statement about Ms. Ahmed's productivity does not indicate that he misconstrued Dr. Shapiro's report.

As this Court previously noted, the scope of review in social security cases is limited and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." Brawner, 839 F.2d at 433. Here, the ALJ's failure to mention every sentence of Dr. Shapiro's report is not legal error. Further, the ALJ's finding regarding Ms. Ahmed's ability to interact with others is supported by substantial evidence in the record. Thus, the Court finds that ALJ Trembly did not err in his discussion of Dr. Shapiro's report.

## V.  Conclusion

After a thorough review of the record and the papers submitted, and based on the reasons set forth above, this Court finds the ALJ's erred in not discussing the opinion of Dr. Sultana Hamrang, Ms. Ahmed's most recent treating psychiatrist. There is insufficient evidence in the ALJ's opinion to determine whether he considered Dr. Hamrang's findings.

The decision whether to remand a case or simply to award benefits is in the discretion of the court, which may direct the award of benefits where no useful purpose would be served by further administrative proceedings. Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989). Because further administrative proceedings would be useful to determine the impact of Dr. Hamrang's findings on the decision of whether to award SSI benefits, this Court hereby RECOMMENDS that this case be REMANDED. Accordingly, this Court RECOMMENDS that Plaintiff's motion for summary judgment be GRANTED and Defendant's cross-motion for summary judgment be DENIED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **November 6, 2006**. The document should be captioned

1  "Objections to Report and Recommendation."  Any reply to the objections shall be filed and served
2  on or before **December 18, 2006**.
3      **IT IS SO ORDERED.**

5  DATED:  October 4, 2006

                                                                _____
LOUISA S PORTER
United States Magistrate Judge

cc:        The Honorable William Q. Hayes
           All parties